Case number 21-5602, City of Taylor, TN v. Astec Industries Inc. Oral argument is not to exceed 15 minutes per side. Mr. Tyrekarp for the appellant. Good morning. This is Daniel Tyrekarp for appellants. Thank you so much for hearing this oral argument this morning. I want to reiterate that I will be taking three minutes for you. In 2016... Thank you. Your sound is breaking up a little bit. Are we having an audio problem there? I'm sorry. Is there any more clear now? That's a bit clearer. Why don't you give it another try? My apologies. Please let me know if the audio is unclear and I will attempt to remedy. In 2016, Astec announced the $152 million sale of appellant plant in Highland. And over the next two years, quarter by quarter, Astec booked over $140 million in revenue for the Highland plant. And over those two years, Astec failed to disclose material adverse facts about that contract, which misled investors. And the first material adverse fact they failed to disclose was that the sale of the Highland plant and all of the revenue for it was contingent on the Highland plant passing a rigorous 30-day reliability run, which required the plant to produce high-quality pellets, wood pellets, importantly using wood-burning furnaces instead of natural gas furnaces, because the customers were in Europe and for the European customers to receive tax credits for low-emission pellets, they had to be produced using wood-burning furnaces instead of natural gas. And they had to pass this 30-day reliability run by April 2018 or the entire purchase price of the Highland plant would have to be refunded to the customer. This was never disclosed in the first two years of the class period. Now, second, the company never disclosed that the plant never came close to passing the reliability run. And we have confidential witnesses who worked at the Highland plant who state that the reliability run never got more than three days into the 30 days that are required, that it never came close to passing the reliability run because they could not produce pellets using wood-burning furnaces as opposed to natural gas. And they would shut down the reliability run because problems would start and it wasn't worth going on and the targets were never met, never come close to being met. And so each time during the class period that Aztec disclosed the revenue it was booking for the Highland plant or disclosed its plans to book revenue quarter by quarter for the Highland plant, those statements were false and misleading because they failed to disclose the contingent nature of that revenue. Now, this is not a case where we're alleging that defendants failed to predict that the plant would fail to pass the reliability run by the end of the longstop date. This case is about failing to disclose material adverse facts that existed at the time when they disclosed that they were booking revenue. Now, I can point your honors to Aldridge v. E.T. Crosscorp in the First Circuit. There are a lot of cases on this that when you disclose revenue that you're booking revenue and that revenue is contingent, you must disclose the contingent nature of the revenue. In that case, the company had a sales contract and had a contingent sales contract that if the price of the product they were selling dipped below a certain level before the purchaser could resell the product, the company would have to reimburse the purchaser. They did not disclose the contingent nature of these sales. Instead, they just booked them. And when the company finally disclosed the contingent nature of the sales, the stock price fell. Investors sued in the First Circuit stated that this was these were false and misleading statements. You book revenue. Investors believe that that revenue is not contingent. Counselor, I recognize that your allegations in the complaint against Brock, who's the CEO of Aztec, would apply to the to to Aztec. But I I have trouble seeing that you've you've raised sufficient allegations with particularity as to the other two individual defendants, Swanson and the other guy. How do you how do you how do you have enough allegations in your complaint as to those other defendants? Your Honor, the defendant is the CFO, the chief financial officer of the company. Yeah. So what did he do according to your complaint? He signed each and every quarterly and annual financial disclosure filed with the SEC, which makes him a speaker of every statement in those disclosures. And those disclosures announced the revenue that the company was booking for the Highland plant without disclosing the contingent nature of that revenue. OK. And does it make any difference that he signed later SEC filings that did recognize the problems? No, Your Honor, the fact that he later there were that's the corrective disclosure. It's part of the security straw that you allege the misstatements that were later corrected. So the fact that they were later corrected does not absolve him from having made false and misleading statements earlier in the class period. All right. Do you deal? OK. And then how about the other defendant? I believe that Swanson is only alleged to have made one misleading statement, which was an optimistic statement about the pellet plants. And I agree, Your Honor, that that is not as strong as the the allegations against defendant Brock, against the company or defendant Silvius. OK. And there are there are several other misleading statements in the complaint that the complaint alleges with particularity, including with the Highland plant, but also with the Hazelhurst plant, which is the other pellet planet issue. So the Highland plant failed to meet the reliability run and Highland employees told Aztec that they would not run any more reliability runs after January or February 2018 because it was pointless. It was a waste of time. They weren't getting anywhere. They were simply not able to run on wood burning fuel. And despite being told this, the company still did not disclose the nature of the contingency. But they also told customers that the expenditures they had put into the plant so far were sufficient to cover the costs to the customers. And they said this in February 2018, that charges to fix the plant that they had announced earlier in October 2017 were sufficient to cover the customers. Nine days later, on March 1st, they announced that the plant had shortfalls that they were required to reimburse the customer for, and that these shortfalls occurred in January and February so that they had already occurred at the time the February 20th statement was made. And in February and April, the company assured investors that the reliability run would be met, that the company would meet its production goals, despite having been told by Highland that there would be no more reliability runs, that the plant was so far from being able to do that they wouldn't even try. And Brock and Swanson both received internal reports explaining the problems with the plant. Both received regular updates on the production targets and on the reliability runs. They knew where the plant stood, and they omitted these facts when they told investors their rosy optimistic projections of being able to meet these goals. And they weren't required to say we're not going to meet these goals. Maybe they really did believe they thought they were going to make them, but they were required to disclose the material. Well, no, if they really thought they were going to make them, you don't have scienter, right? I mean, you have to plead scienter. That's one of the rulings below. Your Honor, respectfully, if they believe that they will fix the problems, that does not absolve a company for having to disclose that there are problems. Okay, but don't you have to have pled that they not only made a false statement, but they made it knowing it was false? Yes. So, Your Honor, we have to plead falsity or recklessness, and we plead both. We plead the internal reports that the company received from Highland that the reliability run would not be run, that they were not able to run on wood-burning fuel, and that they were only running on natural gas. Okay, but what you have to do is you have to rely on reasonable inferences of their intent, because they have not admitted that they knew what they said was misleading or false, right? Yes, Your Honor. The complaint alleges that the defendants knew that the contract was contingent on passing the reliability run, that the company and Brock knew that Aztec had never come close to passing the reliability run, that Highland had told them they would not even try to pass the reliability run again, and they knew that they had never been able to reach production targets using wood-burning furnaces as opposed to natural gas. How many of the Helwig factors do you say your complaint adequately alleges? We believe we meet four of the Helwig factors, which are, as the court recognized, insider trading. So I think the district court recognized that Defendant Brock, in the first two days of May 2018, just a week after he had visited the Highland plant and been told and seen firsthand the problems of the plant, he sold over $3 million of Aztec stock. The only sale he made during the class period, the only sale he had made in three years prior, and he sold the stock a week before Aztec first disclosed that the income, the revenue that the company had booked for Highland was contingent. So the first time the company disclosed that the revenue was contingent was a week after Brock sold $3.2 million in stock. Now, is there record evidence of how much of his stock was sold? I mean, the briefs, I think, refer to 22 percent of his stock holdings, but I didn't see any record evidence as to that. Is there record evidence of what percentage of his stock he sold there in May? I believe 22 percent is correct. It's more than three and a half times his total compensation. Well, we know that it's three and a half times the compensation, but we know that it's 22 percent of the stock holdings. Is that in the record? That's correct from the company's proxy statement. And it's in the record? I believe that defendants have alleged that. No. Okay. Allegation doesn't mean it's in the record. I mean, I guess I'm looking for record evidence that it's 22 percent of the stock holdings. And if you have some, I guess I'd like to know where it is. I don't believe we allege the percentage. Okay. Is that a matter of public record in the proxy statement? Is that what you said? Yes. Companies file every year a Form 14-A that discloses the holdings of insiders and how they have changed over the past year. Okay. And that's in our record? I believe defendants introduced that as an opposition in their opposition brief. All right. Anyway, we know it's $3.1 million. It's substantial. And the timing is obviously suspicious. Okay. I don't have any further questions at this time, Judge Clay. Thank you. We will now turn to the arguments by Mr. Jordach and Ms. Clark. You've got a divided argument there, Counselor and Stan. Yes, sir. Good morning. May it please the court. My name is John Jordach. I'm with Alston & Byrd and I represent the defendants this morning. I will address during my portion, Your Honors, why this court should affirm the district court's decision dismissing the Section 10B and 28 claims. With me today is my partner, Elizabeth Clark, who will then address why this court should affirm the district court's dismissal with prejudice and its decision on Plaintiff's Rule 59e motion. The dismissal of Plaintiff's 10B and 28 claims should be affirmed for two independent reasons. First, the amended complaint fails to allege defendants made a materially false or misleading statement or omission. And second, the amended complaint does not plead a strong inference of scienter with respect to any defendant. Turning first to the omission argument that appellant's counsel made. Putting aside the district court's reasoning that the complaint, as the district court described it, is a hodgepodge of quotes and reasons and virtually impossible to parse through. It's not obvious that the amended complaint alleges an omissions liability theory. That's mainly taken up in the briefing. But even crediting the plaintiff's strained arguments of how the amended complaint pleads this theory, it does not save their claims. As appellant's counsel said, plaintiff's claim defendants misled investors by not disclosing the Highland plant sale was contingent on the plants passing the reliability run and that the plant had not passed that run. But the amended complaint itself, if you look at the allegations, does not explain why those alleged omissions rendered any of the company's statements about the Highland plant misleading. And this is especially true because it is undisputed that Aztec affirmatively disclosed both the failure to meet the Highland production specifications and the requirement that the four lines run on wood. The statements that are allegedly misleading are also inactionable for three other reasons. They're either accurate portrayals of what was going on at the company, they're non-actionable opinions, or they're forward-looking statements that are protected by the safe harbor of the Reform Act. Let me jump to Sienta, your honors. The court should also affirm the dismissal. Let me ask you one on this disclosure issue. I'm looking at both the weather issues and the mechanical issues, which were offered as excuses regarding Highland. And then the explanation of the problems that they were having is what has popped up and mechanical issues that we've corrected have not been extremely major. This is a bit like an asphalt plant, every now and then something pops up and you fix it quickly and we're getting ramped up. The claims of there's just no risk here at all, how are those not incorrect disclosures in light of the, I think it's a transition inspection report and the other reports as well as, let's see, the most current factual information that Mr. Brock particularly had since he had been at the plant and was himself the recipient of the transition inspection report and in a very short order before he sold his stock. I'm struggling with how those are mere puffery as opposed to failure to state a correct factual record. Sure. So, so if you look at the complete picture of the disclosures and these are all quoted verbatim in the amended complaint. This is a company that was entering into a new project which are the pellet plant it's an area of technology that they've not been involved with before. And throughout the entire period. As they were working through the various issues that popped up, they disclosed what those issues were, and that they were having problems so it is not a complete rosy picture that was presented by Mr Brock or by a little bit with, like, the idea that that weather was blamed for some of the problems when in fact the only weather incident, and two or three years, or at the very beginning of the process as opposed to here, where the plant was simply not working. Sure. And that coupled with the issue that there's just no risk here. It seems to me that there's a real question about the misleading nature of those statements that steps on puffery, or even an optimism. So, so your honor Mr Brock throughout the throughout the class period and certainly in the fall of 2017 was disclosing issues with the hammer mills issues burning all of the burners on would as opposed to such just on get on gas if we look at paragraphs 132 135 and 136 of the amended complaint. All of those disclose the failure to meet production specific spec specifics, and also the requirement that they that they all run on would so so yes they're not a distinction between some specific references, and the fact that you actually have a contingent contract that is going to require you to treat monies that you are booking differently. If you don't satisfy that contingency. I think that the company throughout the class period with the Highland plant was disclosing the various issues that they were encountering as they went along. In other words, I'm talking about the contractual condition. Closed isn't that a significant isn't that distinct from saying I'm having a little. This line is working right now, versus if you don't meet this reliability testing. The contract is done right so that's exactly what happened. They didn't need it in the employees even said not gonna waste any more time on trying to run this because it's not going to work. So I do think that the company did disclose that it had to meet certain aspects of the reliability run on October 2 2017 they did they say it as an expressive mission that there was a contingency in the contract, upon which the contract relied. I didn't say that in any of the statements that were quoted. I don't know if they stated it that clearly I don't have, I don't have a reference in the amended paragraph to that specifically know your honor. Okay, thank you. All right, are you going to have your co counsel. I am thank your honor I'll now turn it over to Elizabeth to Elizabeth Clark. Good morning. May it please the court. My name is Elizabeth Clark. I represent the defendants at Belize along with Mr Jordan. I will address why this court should affirm the district court's decision dismissing plaintiff's claims with prejudice and denying plaintiffs will 59 emotion. The district court's decision dismissing plaintiff's claims with prejudice should be affirmed because plaintiff never moved to amend the amended complaint under rule 15 never presented a proposed amended complaint, nor even a description of its proposed contents prior to the entry of judgment. As this court has held plaintiffs their request in a footnote at the end of his opposition to the motion to dismiss, almost as an aside, does not suffice. This circuit has further held that it is not an abuse of discretion for district court to dismiss the claims with prejudice, if a party does not file a motion to amend or proposed amended complaint as plaintiff here did not. As the district court held plaintiff is essentially asking for an insurance policy to prevent dismissal of his case and a generic open request for the court to permit amendment to cure deficiencies. After asking the court to identify those deficiencies is not in accord with the law of the circuit plaintiffs assertions to the contrary should be given no countenance. The district court explained why dismissal was granted without leave to amend and was not required as plaintiff claims to justify its denial of such a motion to amend pursuant to foment. Well, you know, setting aside the question of amendment. We still have all these what would appear to be misleading statements by Mr. Brock. Already in the case that was going to indicate that the scientific requirement would be satisfied. So the case was was still, if that's true, the case would would move forward regardless of this was done with this motion to amend, don't you think. Your Honor, is your question whether if the, if the decision on the cyanide analysis came out differently that the, the case would proceed regardless of the motion to amend. Well, my question is, isn't there enough by way of allegations here and evidence for the case to proceed regardless of what's done with this motion to amend. Well, Your Honor, I think that the district court's analysis and this court's analysis on the cyanide allegations alone would sustain dismissal without reaching any decision about falsity or the misrepresentations. Even in light of Mr. Brock's insider trading and the other factors. We believe that the as the district court found the one Helwig factor supporting cyanide was not sufficient under the precedent to meet the cyanide heightened bleeding standard. So the stock sales alone just don't get plaintiff to the cyanide bar. And if the other three Helwig factors that your opposing counsel alleges are factually alleged correctly in the complaint, that four would be sufficient, wouldn't they? Yeah, I mean, I think it's a it's a it's a balancing test. And I think that if this court came out differently than the district court did on the Helwig factors, you know, that may be that may be a different conclusion. I think the district court didn't have to get to the other questions on the misrepresentations that you're asking about because of the decision running through the Helwig factors, deciding that there was not enough there to support cyanide. Thank you. Just to go back to Foeman for a moment, Foeman does not provide as plaintiff puts forth that an exclusive that there is an exclusive list of appropriate reasons for a district court to deny leave to amend, but rather held that a district court should give some reason or basis for that. Ms. Clark, there wasn't a motion to amend, was there? Correct, Your Honor. OK, I mean, I mean, this is all kind of interesting, but they never they never moved to amend the complaint. All they did was they had a footnote in their brief in opposition to the motion to dismiss. So I think that's kind of the end of the argument right there. What else are we going to argue about? So thank you, Your Honor. I'll turn now to the district court's decision to deny plaintiff's Rule 59E motion, if that if that suits. Because the district court is entitled to considerable discretion in deciding whether to grant a Rule 59E motion, this court reviews for abuse of discretion. Simply put, plaintiff is not entitled to another bite at the apple to plead an actionable securities claim by using a Rule 59E motion to raise arguments that could and should have been raised before judgment was issued. This is for a few reasons. First, plaintiff failed to identify a single fact or revision to the amended complaint that could not have been made prior to the entry of judgment. Second, plaintiff provided no explanation for his failure to seek leave to amend before judgment. And the burden for a plaintiff seeking to amend an adverse judgment is a heavy burden of reopening a case under Rule 59 or 60, which plaintiff has not met. In the post judgment context, the court must consider protecting the finality of judgments and the expeditious termination of litigation. Third, the proposed second amended complaint is futile and does not pass muster under the PSLRA. Specifically, the thin CW allegations in the proposed second amended complaint should not be considered because they do not constitute newly discovered evidence that can be presented on a Rule 59E motion. To be newly discovered, the evidence must have been previously unavailable. Plaintiff does not explain why the new CW allegations were previously unavailable to him. Even if this court does consider the CW allegations, which amount to a single paragraph, alleging there were defects with the hammer mills at the Highland plant, they add nothing new that would affect the court's SINR analysis. Further, the proposed second amended complaint recasts the same accounting allegations that already appeared in the amended complaint. They simply recast them as an inability to make dependable estimates that violated GAP, and this fails because this court has held that the failure to follow GAP is insufficient to state a securities fraud claim. Third, the proposed second amended complaint adds nothing to cure the fatal flaws in the SINR allegations against Mr. Silvius that this was discussed previously earlier in the argument. In sum, plaintiffs had ample opportunity to state a claim. If they cannot state a claim in three years and 70 pages, the time has come for finality. We ask you to affirm the District Court's decisions. If there are no other questions, I thank you for your time, Your Honors. Thank you very much, and we'll hear rebuttal at this time. Thank you, Your Honors. I wanted to return to the Helwig factors. We had discussed the first Helwig factor, which was the insider trading by Defendant Brock, and the three other factors that have been met in this case are the internal reports that contradict public statements. Defendant Brock received internal reports, both in paper form in terms of the material leakage memo and other reports that he received when he was at the plant, but he also held meetings. Defendant Swanson held meetings, and the District Court refused to count the meetings as internal reports, which was contrary to the law in the circuit in Bridgestone and in Asperion Therapeutics. Swanson is an executive officer at the company. His regular attendance at meetings and all the knowledge that he gained at these meetings are imputed to the company, and Bridgestone makes that very clear that a vice president attending quarterly meetings where material information was discussed is imputed to the company. It's primarily just one statement by him, is that correct? Yes, but in terms of scienter for the company and for Mr. Brock, the knowledge that Swanson gained at these meetings is imputed to them, and it's considered their knowledge in terms of scienter. And is that the same as the knowledge that you allege for Brock? Yes, Your Honor. Brock had his own independent knowledge as well from his own visit to the Highland plant. So, there's a closeness in time between the misstatements and the corrections. For example, Brock stated in a February 20th, 2018 investor call that the charges for all the improvements to Highland in 2017 were adequate to fulfill Aztec's commitments to Highland, and then nine days later disclosed that Aztec had agreed to compensate Highland for production shortfalls that had already occurred in January and February of that year. There is the disregard of the most current information that throughout the class period, Brock repeatedly assured investors that the company would meet the production goals, despite having internal reports saying that they had never come close to meeting the production goals, that Highland would not even run another reliability test. Brock repeatedly told investors that $100 million in revenue for new pellet plant orders would come in based on the success of the Highland and the Hazelhurst plant, despite the fact that they were not successes, despite the fact that no new orders ever came in. And he repeated these optimistic statements over and over throughout the class period, completely disregarding all of the current information. All right, counsel, in regard to defendant Swanson, I've got in front of me your brief at page three, footnote one, you state plaintiff is not appealing the dismissal of claims against defendant Malcolm Swanson. That's correct, your honor. I thought you argued today that he shouldn't have been dismissed. No, your honor. We believe that defendant Silvius Brock and the company, the corporate defendant aspect were improperly dismissed. Okay, well, how about all right, so Swanson, you concede he was that you're not appealing Swanson. Are you appealing the other guy as well or not? We are. We are appealing the other three defendants, defendant Silvius, defendant Brock, and the corporate defendant. Silvius. Okay. All right. Thank you. All right. Thank you for your arguments. Case is submitted.